UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN B. MYLES,<br><br>          Petitioner,<br><br>    v.<br><br>WARDEN,<br><br>          Respondent. | CAUSE NO.: 3:19-CV-459-RLM-MGG |

OPINION AND ORDER

John B. Myles, a prisoner without a lawyer, filed a habeas corpus petition challenging his 2008 conviction in Lake County for armed robbery and criminal confinement under cause number 45G01-0701-FB-00008. For the reasons that follow, the court denies the petition.

## I.  BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). Mr. Myles must rebut this presumption with clear and convincing evidence. *Id.* On direct appeal, the Indiana Court of Appeals set forth the facts underlying Mr. Myles's conviction as follows:

> [S]hortly before 7:00 a.m. on October 11, 2006, assistant manager Nathaniel Thompson and photo specialist Staci Gamblin unlocked the front entrance of their Walgreens drugstore in Hammond. Thompson noticed a man, later identified as Myles, "pacing a little bit" across the street. Thompson and Gamblin entered the store, locked the door behind them, and passed through two locked doors to the office. Thompson then returned to the front of the store to organize the newspapers and open for business. As Thompson

>unlocked the front entrance, he saw Myles approaching the store. Myles wore a ballcap, eyeglasses, and a mask covering his nose and mouth. When Thompson greeted him, Myles pulled a black revolver from his waistband and asked, "Where is the girl?" Thompson raised his hands and led Myles to the office.
>
>Myles ordered Gamblin to lie on her stomach and told Thompson to empty two safes. Thompson deposited the money into a bag Myles gave him. Myles ordered Thompson to lie next to Staci. As Thompson did so, he turned and saw Myles holding a latex glove and a pair of handcuffs in one hand, attempting to chain Thompson's left wrist to Gamblin's right wrist. Myles fastened the handcuffs around Gamblin's wrist and told them not to move or he would kill them. After Myles left the store, Gamblin called the police.
>
>Evidence technicians collected the handcuffs and one latex glove from the office and a second latex glove behind the first locked door leading to the office. State police laboratory analysts recovered Myles's DNA from inside one of the gloves and his left index fingerprint from the handcuffs.
>
>In November 2006, police showed Gamblin and Thompson a photo lineup that did not include Myles's photo. Gamblin identified one of the men as the perpetrator. Thompson was unable to identify any of the men as the perpetrator. In January 2007, police showed Thompson a photo lineup that included a photo of Myles not wearing eyeglasses. Thompson circled Myles's photo and stated that he was 90% certain that Myles was the perpetrator. Police then showed Thompson a driver's license photo of Myles wearing eyeglasses, and Thompson stated that he was "a hundred percent sure" that Myles was the person who had robbed the drugstore.

Myles v. State, 912 N.E.2d 918 (Table), 2009 WL 2878020, at *1 (Ind. Ct. App. Sept. 9, 2009) (internal citations omitted). A jury found Mr. Myles guilty of one count of felony robbery and two counts of felony criminal confinement, and the trial court sentenced him to an aggregate term of 32 years in prison.

On direct appeal, Mr. Myles challenged the sufficiency of the evidence, arguing that the state failed to prove identity. Myles v. State, 2009 WL 2878020, at *2. The court of appeals rejected his challenges to the eyewitness identification

testimony and the DNA and fingerprint evidence as "merely invitations for us to reassess witness credibility and reweigh evidence in his favor," which it was not permitted to do. Id. The court found that Mr. Myles had waived, under Indiana law, any argument that the eyewitness identification procedure was unduly suggestive by not objecting on that basis at trial. Id. n.1. The court affirmed Mr. Myles's conviction in all respects. Id. He didn't file a petition to transfer to the Indiana Supreme Court.

Mr. Myles filed, and later amended, a state post-conviction petition. The state post-conviction court denied the petition after an evidentiary hearing. On appeal, Mr. Myles argued that his trial counsel was ineffective on various grounds, and that the post-conviction court was biased against him and committed numerous procedural errors. Myles v. State, 102 N.E.3d 350 (Table), 2018 WL 2227880, at *1 (Ind. Ct. App. May 16, 2018). The Indiana Court of Appeals found no merit to these arguments and affirmed the denial of post-conviction relief. Id. at *2-*7. Mr. Myles filed a petition to transfer to the Indiana Supreme Court asserting that: (1) the Indiana Court of Appeals "erred in its assessment of the facts" in rejecting his ineffective-assistance claims; (2) the Indiana Court of Appeals erred in concluding that the post-conviction judge was not biased against him; and (3) the Indiana Court of Appeals erred in denying his ineffective-assistance claim based on counsel's failure to "challenge the warrantless seizure of his two vehicles." (ECF 8-14 at 3.) The Indiana Supreme Court denied transfer.

Mr. Myles then filed this federal habeas corpus petition raising the following claims: (1) his trial counsel was ineffective in failing to "investigate [the] circumstances of [his] arrest"; (2) his trial counsel was ineffective in failing to have his arrest quashed; (3) his trial counsel was ineffective in failing to investigate an alternative suspect; (4) the post-conviction judge committed "judicial misconduct" by introducing a "fraudulent arrest warrant into open court"; (5) police wrongfully impounded his vehicles during their investigation; (6) his trial counsel, the prosecutor, and the trial judge "conspired" to deny him a fair trial; (7) the eyewitness identification procedure used by police was unduly suggestive; and (8) the prosecutor and trial judge "allowed perjured testimony" at his trial. (ECF 1 at 3-7.)

## II.   ANALYSIS

Mr. Myles's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

4

>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is "difficult to meet" and "highly deferential." Hoglund v. Neal, 959 F.3d 819, 832 (7th Cir. 2020) (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011)). "It is not enough for a petitioner to show the state court's application of federal law was incorrect; rather, he must show the application was unreasonable, which is a 'substantially higher threshold.'" Hoglund v. Neal, 959 F.3d at 832 (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). In effect, "[a] petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); Hoglund v. Neal, 959 F.3d at 832. The exhaustion requirement is premised on a recognition that the state courts must be given the first opportunity to address and correct violations of their prisoners' federal rights. Davila v. Davis, 137 S. Ct. 2058, 2064 (2017); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review. Baldwin v. Reese, 541 U.S. 27, 30-31 (2004); O'Sullivan v. Boerckel, 526 U.S. at 845. This

5

includes seeking discretionary review in the state court of last resort. O'Sullivan v. Boerckel, 526 U.S. at 848.

The companion procedural default doctrine, also rooted in concerns for the relationship between federal and state courts, precludes a federal court from reaching the merits of a claim when the claim was presented to the state courts and was denied on the basis of an adequate and independent state procedural ground, or the claim was not presented to the state courts and the time for doing so has passed. Davila v. Davis, 137 S. Ct. at 2064; Coleman v. Thompson, 501 U.S. 722, 735 (1991). A federal court may consider a defaulted claim if the petitioner establishes both "cause" to excuse his default and "actual prejudice resulting from the alleged constitutional violation." Crutchfield v. Dennison, 910 F.3d 968, 973 (7th Cir. 2018) (citation and internal quotation marks omitted). "Cause is an objective factor external to the defense that impeded the presentation of the claim to the state courts," and only applies to factors that "cannot fairly be attributed to the prisoner." *Id.* (citation and internal quotation marks omitted). With these principles in mind, the court turns to the petition.

Mr. Myles asserts in claims one and two that his trial counsel was ineffective in failing to "investigate [the] circumstances of [his] arrest" and in failing to have his arrest quashed. (ECF 1 at 3.) Under the Sixth Amendment, a criminal defendant is entitled to "effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 16 (2009). To prevail on a Sixth Amendment claim, the petitioner must show that

6

counsel's performance was deficient and that the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668 (1984).

The central question on the deficiency prong is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices[.]" Harrington v. Richter, 562 U.S. at 105. The court's review of counsel's performance is deferential, and there is an added layer of deference when the claim is raised in a habeas proceeding: "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* An attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." Delatorre v. United States, 847 F.3d 837, 845 (7th Cir. 2017). Instead, "[i]t must merely be reasonably competent." *Id.*

Under the Sixth Amendment, counsel has a "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland v. Washington, 466 U.S at 690-691. The decision whether to investigate must be assessed for reasonableness based on the circumstances known at the time, "applying a heavy measure of deference to counsel's judgments." *Id.* at 691. Counsel is also given significant discretion in selecting a trial strategy. Yu Tian Li v. United States, 648 F.3d 524, 528 (7th Cir. 2011). A federal habeas court determining whether counsel's decisions were reasonable must respect its "limited role in determining whether there was

7

manifest deficiency in light of information then available to counsel." Premo v. Moore, 562 U.S. 115, 125 (2011).

On the prejudice prong, the petitioner must show that there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland*, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel had acted differently." Harrington v. Richter, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112. If the defendant wanted counsel to raise an argument that itself had no merit, an ineffective assistance claim cannot succeed, because "[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." Stone v. Farley, 86 F.3d 712, 717 (7th Cir. 1996).

On post-conviction review, the Indiana Court of Appeals considered Mr. Myles's ineffective-assistance claims contained in claims one and two, correctly recognizing *Strickland* as the governing standard. Myles v. State, 2018 WL 22227880, at *5. The court concluded that Mr. Myles didn't receive ineffective assistance from his trial counsel under the *Strickland* analysis. *Id.* As the state court observed, Mr. Myles's claims are premised on his mistaken belief that police never obtained a warrant for his arrest. *Id.* The record doesn't include the

8

arrest warrant itself; the warrant was maintained under seal in the court's files because it contained Mr. Myles's social security number. The warrant was inadvertently not made part of the record on direct appeal, but at the post-conviction hearing, the state judge noted that the sealed warrant was in the court's file and offered to provide Mr. Myles with a copy of it. For reasons that are not entirely clear, the record was never perfected to include this document.

The Indiana Court of Appeals specifically found that Mr. Myles was arrested in his home "pursuant to a warrant." Myles v. State, 2018 WL 2227880, at *5. Mr. Myles hasn't rebutted the presumption that this finding is correct with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). To the contrary, there is ample evidence in the record that Mr. Myles was arrested pursuant to a duly issued warrant. The state court docket reflects that police filed a probable cause affidavit in support of Mr. Myles's arrest on January 12, 2007, and that a magistrate issued an arrest warrant that same day.[1] The record includes the magistrate's order for the warrant. In the post-conviction proceedings, Mr. Myles himself submitted a copy of a Lake County Sheriff's Office crime "alert" reflecting that a warrant had been issued for his arrest on January 12, 2007. Mr. Myles's trial counsel testified at the post-conviction hearing that he didn't move to quash Mr. Myles's arrest because saw no basis to do so after investigating the matter, because his understanding at the time was that an arrest warrant had been

---

[1] Documents before the court reflect that the U.S. Marshal's Service, the Hammond Police Department, the Lake County Sheriff's Office, and the Schererville Police Department all were involved in Mr. Myles's arrest.

9

issued. Counsel looked into the matter, but found a motion to quash on this ground unwarranted. Based on the record, Mr. Myles hasn't established that the Indiana Court of Appeals' denial of claims one and two constituted an unreasonable determination of the facts or an unreasonable application of *Strickland*. These claims are denied.

Mr. Myles argues in claim three that his trial counsel was ineffective in failing to investigate an alternative suspect. The respondent argues that this claim is procedurally defaulted. The record reflects that Mr. Myles raised this claim before the Indiana Court of Appeals on post-conviction review, Myles v. State, 2018 WL 2227880, at *6, but didn't include this claim in his petition to transfer. He mentioned the alternative suspect in connection with his judicial bias claim, but he didn't present the Indiana Supreme Court with both the "operative facts and the legal principles that control" his present claim, namely, that his trial counsel was ineffective in failing to investigate this person. *See* Stevens v. McBride, 489 F.3d 883, 894 (7th Cir. 2007). Rather, his reference to the alternative suspect is buried in a section labeled, "Misconduct by the Post-Conviction Judge." (ECF 8-14 at 10, 12.) Because he didn't fairly present this claim to the Indiana Supreme Court, it is procedurally defaulted. Mr. Myles's traverse in support of his petition didn't respond to the state's procedural default argument or provide grounds for excusing his default. Therefore, the court can't reach this claim on the merits.

In claim four, Mr. Myles asserts that the post-conviction judge committed "judicial misconduct" and made various errors in the post-conviction

10

proceedings. The respondent argues that this claim is partially procedurally defaulted and otherwise not something this federal court can address.

On post-conviction review, Mr. Myles asserted various errors by the post-conviction judge, including that she erred in denying his request for counsel, for subpoenas, and for transcripts. Myles v. State, 2018 WL 2227880, at *2. The Indiana Court of Appeals found the subpoena argument waived under state law because it wasn't supported by a cogent argument or citation to authority. *Id.* at *3. A finding of waiver constitutes an adequate and independent state procedural ground that bars federal habeas review. Sturgeon v. Chandler, 552 F.3d 604, 611 (7th Cir. 2009); *see also* Bobo v. Kolb, 969 F.2d 391, 399 (7th Cir. 1992) ("A federal court reviewing a habeas petition is required to respect a state court's finding, under state law, of waiver or procedural default.") Mr. Myles didn't address the respondent's procedural default argument or provide grounds for setting aside his default of this issue. Mr. Myles couched his arguments about the remaining grounds included in claim four in terms of violations of state law when he presented them to the Indiana Court of Appeals. Those claims can't be reasserted in this court, because errors of state law aren't cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Mr. Myles argues in claim five that police wrongfully impounded his vehicles. The respondent argues that this claim is procedurally defaulted. Mr. Myles didn't raise any claim about the wrongful seizure of his vehicles either on direct appeal or on post-conviction review. *See* Myles v. State, 2009 WL 2878020, at *1-*2; Myles v. State, 2018 WL 222780, at *1-*7. On post-conviction review,

11

he raised a related claim that his attorney was ineffective in failing to challenge the seizure of his vehicles, but that involved a different set of operative facts and legal principles than the free-standing Fourth Amendment claim he wants to raise here. *See* Stevens v. McBride, 489 F.3d at 894. The Indiana Court of Appeals found his ineffective-assistance claim premised on his attorney's failure to challenge the seizure of his vehicles waived because he didn't adequately develop the factual basis for this claim at the post-conviction hearing. Myles v. State, 2018 WL 2227880, at *7. The finding of waiver is an adequate and independent state procedural ground that bars federal habeas review. Sturgeon v. Chandler, 552 F.3d at 611; Bobo v. Kolb, 969 F.2d at 399. Mr. Myles hasn't provided grounds to excuse his defaults, so the court can't reach the merits of this claim.

In claim six, Mr. Myles says there was a conspiracy by his attorney, the prosecutor, and the trial judge to deny him a fair trial. In claim seven, he contends that the identification procedure used by police for one of the eyewitnesses was unduly suggestive. As the respondent points out, Mr. Myles acknowledges in his petition that he never presented either of these claims to the Indiana Supreme Court. Because Mr. Myles didn't present these claims in one complete round of state review and the time for doing so has passed, they are procedurally defaulted.[2] Mr. Myles didn't address his procedural default in his

---

[2] On direct appeal, the Indiana Court of Appeals noted that any challenge by Mr. Myles to the identification procedure used by police was waived under state law because he didn't raise any objection at trial. Myles v. State, 2009 WL 2878020, at *2 n.1. This waiver constitutes an additional level of default precluding consideration of the claim on the merits. *See* Sturgeon v. Chandler, 552 F.3d at 611; Bobo v. Kolb, 969 F.2d at 399.

traverse. In his petition, he said generally that he didn't present claim six to the Indiana Supreme Court because he "could not properly research it," and that he didn't present claim seven because he "thought this was a moot issue" in light of his other argument about the lack of an arrest warrant. Neither issue involves the type of "external" impediment that could excuse a procedural default. *See* Crutchfield v. Dennison, 910 F.3d at 973. Because Mr. Myles hasn't provided grounds to excuse his default, the court can't consider these claims on their merits.

In his final claim, Mr. Myles contends that the prosecutor and trial judge knowingly let a police officer commit perjury at trial when he testified that he obtained a warrant for Mr. Myles's arrest. The respondent argues that this claim is defaulted because Mr. Myles didn't present it to either the Indiana Court of Appeals or the Indiana Supreme Court. On state post-conviction review, Mr. Myles raised a related claim that his trial counsel was ineffective in failing to challenge his arrest based on the alleged lack of a valid warrant, but this involved a different set of operative facts and legal principles than the claim he is raising in this court. *See* Stevens v. McBride, 489 F.3d at 894. Thus, he didn't fairly present this claim to the state courts, and the time for doing so has passed. He hasn't provided grounds to set aside his procedural default, so the court can't reach this claim on its merits.

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the

petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, Mr. Myles's claims are procedurally defaulted or otherwise without merit under AEDPA standards. The court finds no basis to conclude that reasonable jurists would debate the outcome of the petition or find a reason to encourage Mr. Myles to proceed further. Accordingly, the court declines to issue him a certificate of appealability.

### III.   CONCLUSION

For the reasons set forth above, the petition (ECF 1) is DENIED, and the petitioner is DENIED a certificate of appealability. The clerk is DIRECTED to close this case.

SO ORDERED on October 13, 2020

> s/ Robert L. Miller, Jr.
> JUDGE
> UNITED STATES DISTRICT COURT